IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **STATE FARM FIRE AND CASUALTY COMPANY, et al.,**<br><br>      **Plaintiffs,**<br><br>      v.<br><br>**GATES, SHIELDS & FERGUSON, P.A.,**<br><br>      **Defendant.** | Case No. 14-2392-EFM-GLR |

**MEMORANDUM AND ORDER**

The Court addresses Defendant's Motion to Compel Discovery Responses (ECF 136). The motion invokes Fed. R. Civ. P. 26(b), 26(e) and 37(a) for an order to compel co-plaintiff State Farm Mutual Automobile Insurance Company to respond to Defendant's interrogatories, requests for production and request for admissions. Plaintiff opposes the motion. For the following reasons the Court grants it in part and denies it in part.

**I.  INTERROGATORIES**

Plaintiff shall answer interrogatories numbered 1, 2 and 6. The Court denies the motion as to those numbered 3 through 5, and 7 through 16.

Interrogatory 1 and Plaintiff's response to it are as follows:

> 1.  Please state what facts you relied upon in Paragraph 111, an affirmative defense in the Answer to the First Amended Counterclaim (ECF Doc. No. 78).
>
> ANSWER: Plaintiffs have asserted the defense to preserve the opportunity to explore and present the issue of fees.

Plaintiff contends it has answered the interrogatory "fairly." The defense stated in Paragraph 111 of Plaintiffs' answer is that any claim for fees not expressly permitted by the Agreement of

the parties "constitutes an attempt to collect an unreasonable fee and is unethical under Model Rule of Professional Conduct 1.5 and therefore unenforceable." The answer thus appears to simply identify and preserve a legal argument and defense against any claim for attorneys fees not authorized by the Agreement. The response of Plaintiff does not state what facts, if any, it may have to support its defense. Stating those facts would simply identify or recite whatever specific claim(s) of Defendant seek unauthorized attorneys fees and in what respect they are unethical. Accordingly, the Court will grant the motion to require a further response to Interrogatory 1.

 Interrogatory 2 and the response follows:

> 2.  Please state what facts you relied upon in Paragraph 105, an affirmative defense in the Answer to the First Amended Counterclaim (ECF. Doc. No. 78).
>
> ANSWER: Plaintiffs have asserted the defense to preserve the opportunity to explore and present the issue of mitigation.

Paragraph 105 of the Answer to the Counterclaim pleads that ". . . defendant has failed to mitigate its damages." (ECF 78 at 12.) The answer by Plaintiff sidesteps the interrogatory. Plaintiff shall answer it to provide whatever facts support the defense.

 Interrogatories 3, 4 and 5 all ask about agreements between State Farm and law firms, other than Defendant, by which Plaintiff has pursued subrogation claims, the reasons for termination of such agreements, and every instance of its payment to them of attorneys fees or reimbursement of expenses. Plaintiff objected to these three interrogatories on grounds of irrelevance. It objected to Interrogatories 3 and 4 upon the additional grounds that the burden to identify and produce the requested information is grossly disproportionate to any benefit it might provide. As explained in previous orders, this case addresses the attorney-client relationship that

existed between the parties.  It is not a case about attorney-client relationships with other law firms.  The Court sustains the objections.  Accordingly, it denies the motion as to Interrogatories 3, 4 and 5.

Interrogatory 6 asks Plaintiff to "describe the current status and procedural posture of the Pending Subrogation Claims assigned to GSF prior to January 8, 2014 which remain pending and not yet resolved."  Although it objected to the interrogatory, Plaintiff answered it by asserting its understanding that "Goodman, Brandywine, Christmas, Kingsley Management, Missouri Valley Physicians and Enright had been resolved." (ECF 78 at 12.)  In its response to the motion Plaintiff suggests that the question is probably moot, "as the information will be included in documents plaintiffs will produce in response to the August 4 Order."  Given this commitment, the Court may assume that the issue probably is moot.  The Court will grant the motion, nevertheless, with regard to any such information that has not been produced to Defendant, thus to assure that the issue is indeed moot.

Interrogatories 7 and 8 in turn ask Plaintiff to "identify and describe the factual and legal basis which support the communications between State Farm and the law firm of Cozen O'Connor or any other non-GSF lawyer or law firm regarding the decision to abandon the subrogation claim for. . ." the Willowbrooke claims and the Wurth claim. (ECF 137-1 at 3.) State Farm objected to both interrogatories upon grounds that they invade attorney-client privilege. Essentially these two interrogatories ask the client—here State Farm—to describe both the facts and the law that it and its attorneys discussed, which led to its decision to abandon two legal claims.  The Court finds Interrogatories 7 and 8 poorly worded and in any event difficult to address as anything other than requests for what legal advice and recommendation

Plaintiff may have elicited and received from one of its lawyers. The Court sustains the objections and denies the motion to require 7 and 8 to be answered.

The Court sustains the objections to the remaining interrogatories, numbered 9 through 16. Interrogatories 9 and 10 ask respectively for the identity of lawyers or law firms that Plaintiff has added or deleted from its program for handling subrogation claims. The Court grants the objections of irrelevancy.

Interrogatories 11 and 12 respectively ask Plaintiff to identify what claim "handlers" have ever been assigned to Defendant or to the law firm of Wallace Saunders. Plaintiff objected upon grounds the interrogatories are vague, overly broad, not reasonably calculated to lead to the discovery of relevant evidence, and disproportionate to any value the information may have. It also suggests the interrogatories provide no time limits and would thus require a search to identify all "handlers" since July 1, 2009. Without any specific definition of "handlers," the Court assumes it refers to anyone who during a period of about five years was designated to do anything with regard to either of these two law firms. The Court sustains the objection that these two interrogatories are too vague and broad to require responses. As their proponent, Defendant bears the burden to state with adequate clarity whom it seeks to identify with these two questions. It has not done that. The Court also sustains the objection of irrelevance as to the identity of persons assigned to the law firm of Wallace Saunders.

Interrogatories 13, 14 and 15 ask Plaintiff to describe respectively changes, developments, revisions to work rules, and allocation of work that it implemented "as a result of its comprehensive review of its internal work practices as referenced in the Informational email from John Fuchs dated April 10, 2012 (GATES 0931 PROD)." Defendant argues for relevance.

4

Plaintiffs argue otherwise. Defendant bears the burden to show relevance. The Court finds it has not done so. Accordingly, it denies the motion as to these three interrogatories.

Interrogatory 16 asks Plaintiff to describe the terms of the engagement for legal services between it and Wallace Saunders with regard to any of the cases listed in pending subrogation claims "referenced above." The parties agree that the reference is to the claims that Defendant was handling before transferring them to the law firm of Wallace Saunders. Plaintiff objects on grounds of irrelevancy. Its memorandum states, "State Farm has made it clear to GSF that any fee it pays Wallace Saunders will not diminish defendant's claim." (ECF 150 at 9.) In support of this commitment, Plaintiff recites paragraph 58 of the First Amended Counterclaim (ECF 75), which states as follows:

> 58. Wallace Saunders is not asserting a competing claim for attorneys' fees for the handling of the pending subrogation cases that it took over. Thus, there is no competing claim for the attorneys' fee request and no apportionment of time required by the Court.

(*Id.* at 12.) As already noted, Defendant as the moving party bears the burden to show relevancy for its interrogatories. Its argument assumes that relevancy is obvious or apparent. The Court does not find it so. Accordingly, it sustains the objection.

## II.  REQUESTS FOR PRODUCTION

The motion asks that Plaintiff be ordered to respond to requests for production of documents, numbered 1 through 25, 27 through 38, 40 and 41. The Court grants the motion as to requests 24, 25, 27, 28, 31 to a limited extent, and 38. It overrules the motion as to the other requests. It provides the following reasons for its ruling:

Requests 1 through 4 ask for all documents ("after January 1, 2009" with regard to 1, 2 and 3) that relate to the decision by Plaintiff to retain Wallace and Saunders or other legal

5

counsel to handle its subrogation cases (in Kansas and Missouri with regard to requests 1, 2 and 3). Plaintiff objected on grounds the requests are not calculated to lead to the discovery of relevant evidence. Defendant fails to sustain its burden to show relevancy. The Court sustains the objection. This litigation concerns the retention and termination of Defendant, not other law firms, to handle subrogation cases.

Requests 5 through 17 ask respectively for production of the "claim file, which includes all internal log notes, emails, correspondence, case evaluations, and notations by the State Farm's internal recovery unit after January 7, 2014," for each of thirteen claims which Defendant was handling prior to January 8, 2014. Plaintiff objected to Requests 5 through 17 upon several grounds. They included irrelevance and imposition of an undue burden to produce the requested items. The Court will assume that a "claim file" for each claim would state the dollar amount that Plaintiff as insurer would have paid to or on behalf of its insured in settlement of the covered loss. With its payment the insurer becomes substituted or "subrogated" to the legal rights of its insured to recover the amount of that payment against a third party who by law may be ultimately liable for causing the loss. The amount of its subrogation claim, therefore, is the liquidated amount of its payment to its insured. And this in turn is the amount for which an attorney, retained by the insurer as subrogee, would then seek to recover against the potentially liable third party. The Court assumes that a claim file would include this basic information as to the dollar amount of the claim in question. To this extent, the Court finds the information in the claim file relevant to the amount of the counterclaims of Defendant in this case.

In this instance, however, the more critical question is whether the production of the entire claim file for each of the relevant claims imposes a disproportionate and unnecessary burden upon Plaintiff. It argues that it would. The Court agrees, for the following reasons.

Defendant has only vaguely and unconvincingly asserted any need for production of the claim files. They relate to claims for which it was initially retained to pursue. The Court can reasonably assume that, upon receiving the relevant information from Plaintiff, Defendant as its attorney would then have created its own working file as to each claim. That file would include the dollar amount of the claim, as well as other information pertinent to fulfilling the duties of Defendant to represent its client. The Court can reasonably assume, furthermore, that Defendant would have retained its own file, relevant to the claim, notwithstanding returning the Plaintiff's file to the Plaintiff or to another law firm, as might be requested. The Court questions what purpose is served or what need would be met, therefore, by producing the claim files of Plaintiff to Defendant in response to its request. The Court does not find that Defendant has persuasively shown a purpose or need for them.

Defendant argues, on the other hand, that Plaintiff has failed to justify its objection that production of the claim files would be unduly burdensome. More specifically, it contends that, "Defendant (sic) has failed to provide an 'affidavit or specific supporting information' to substantiate its overly broad and unduly burdensome objections." (ECF 137 at 13.) In response, however, Plaintiff did provide the affidavit of its attorney, purportedly made "from my personal knowledge from working with the discovery in this case." (ECF 150-5 at 1.) It includes the following statements:

> 3. In each of Requests 5 through 17 GSF seeks the complete claim file on an individual subrogation claim.
>
> 4. The claim files involved here are voluminous. They were first handled as damage claims from State Farm's insureds. Some were quite large    losses that involved a substantial amount of adjustment work. After the initial handling was completed, the files became the subject of subrogation activity.

> The subrogation efforts are also significant. It is not uncommon for complete claim files of this type to be 1,000 to 2,000 pages in length.
>
> 5. Each claim file has personal information of insureds and others throughout. That includes addresses, birthdates, property values, license numbers and Social Security numbers. It is a policy of State Farm and/or a requirement of various State and Federal laws to protect such personal information.
>
> 6. In the claim files defendant seeks, State Farm retained a law firm to replace defendant after defendant was terminated. Each of the files has attorney-client privileged information throughout the file material, including in the file-notes, emails and correspondence.
>
> 7. I estimate that performing the reviews necessary to provide the requested claim files and redacting personal and privileged information would require a minimum of 100 hours and would costs will over $10,000.

(*Id.* at 1, 2.)

In its reply memorandum Defendant takes issue with the statements in the affidavit. The Court finds nothing of consequence, however, to discredit them. Defendant suggests that Plaintiff, rather than its counsel, should provide the affidavit. That would often be true, simply because the client and not the attorney often has whatever is first-hand, relevant knowledge. But, as here, that is not always the case. In this instance, as already noted, the affiant attorney executed his affidavit "from my personal knowledge." Defendant provides nothing to impugn that statement. Absent a contrary showing, the Court finds nothing either to bar an attorney from relevant knowledge or to discredit his affidavit.

For the foregoing reasons the Court sustains the objection that production of the claim files would be unduly burdensome. In doing so, the Court also applies Fed. R. Civ. P. 26(b)(1).[1] The rule provides as follows:

> (b) Discovery Scope and Limits.
>
> (1) Scope in General. Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Applying the rule, the Court does find that the burden or expense of producing the requested claim files is disproportional to the needs of the case, considering whatever importance they may have in resolving the issues, and that the burden of production outweighs its likely benefit. Requests for production 18 through 23 ask for documents containing information about how State Farm generally conducts its business with law firms and production of communications it has had with the law firm of Wallace Saunders and its attorneys. Plaintiff objected on grounds the requests are not reasonably calculated to lead to the discovery of admissible evidence. It notes that the Court by its order of August 4, 2015, has already ruled that Defendant has failed to show the relevancy of this type of information. The Court agrees. It again sustains the objection of irrelevancy. It finds nothing, either from the arguments of Defendant or from its own review of the pleadings and memoranda, to support a finding that

---

[1] This amended rule, effective December 1, 2015, replaces former Rule 26(b)(2)(C).

Plaintiffs' retention of other law firms and whatever contracts and business it may have with them has any reasonable bearing of consequence upon the issues in this case.

Requests 24 and 25 ask for documents that relate to specific subrogation claims, initially referred to Defendant and later transferred to the Wallace Saunders firm, after termination of the contract between State Farm and Defendant. Request 24 asks for documents "that provided authority to settle, close or abandon" the claims. Request 25 asks for "documents and communications by and between State Farm and the named insured(s) after" termination. Plaintiff objected "to the extent it involves the attorney-client privilege and protection for work product and attorney mental impressions." It also objected to Request 24 on grounds of irrelevancy.

Documents responsive to Requests 24 and 25 may indeed contain relevant information as to the value of any one or more of the listed claims and thus to the counterclaims of Defendant. Accordingly, the Court overrules the objections of irrelevancy. And it finds nothing to support the objection of work product. To the extent the produced documents contain privileged information, as Plaintiff contends, it may delete such information from them. The information to be produced, therefore, need not include the substance of legal advice either sought or given, but rather for the specific authority given by any insured or by Plaintiff as to what action shall be taken with regard to each of the designated claims.

The Court also grants the motion as to Request for Production 27. It asks for "Documents which reflect all deposits of funds which are held by Wallace Saunders or State Farm pursuant to any attorneys' lien sent by GSF." Plaintiff objected "to the extent" the request invades attorney-client privilege and work product and seeks confidential information. Plaintiff

has not shown any privilege or work product.  To the extent the information is confidential, as argued, it shall be produced subject to the protective order previously entered.

The Court grants the motion as to Request for Production 28.  Plaintiff responded as follows:

> 28.  A copy of the Settlement Agreement for each of the Pending Subrogation Claims, identified above.  If the Settlement Agreement contains a confidentiality provision, the Protective Order (ECF Doc. No. 15) would apply to this request.
>
> RESPONSE: State Farm objects on the basis the request is not calculated to lead to the discovery of evidence that is relevant to the claim or defense of any party.  Further the burden to identify and produce the information greatly exceeds and is grossly disproportionate to any benefit the information could ever provide.

The Court understands "Pending Subrogation Claims" to consist of those identified in Requests 24 and 25, discussed above.  Plaintiff has supported neither of its objections of irrelevancy or of undue burden against Request 28.  Accordingly, it shall produce the requested documents.

Request for production 29 and the response to it are as follows:

> 29.  Documents constituting, summarizing, referring to or concerning, in whole or in part any communications State Farm had with Wallace Saunders related to the following topics: suspension of referrals of subrogation cases by State Farm to GSF, related to the assertion of attorneys' fees by GSF against State Farm or Wallace Saunders, termination of the attorney client relationship between State Farm and GSF, the addition of Wallace Saunders to the list of attorneys approved to handle State Farm Subrogation matters after March 13, 2013, or the terms of the attorney fees to be paid by State Farm to Wallace Saunders for the handling of any claim file identified on the list of Pending Subrogation Claim Files.
>
> RESPONSE: State Farm objects to the Request for the reason it invades the attorney-client privilege and the privilege and protection for work product and attorney mental impressions.  Wallace Saunders has represented State Farm for many years.

11

>State Farm further objects on the bases that the Request seeks highly confidential and sensitive materials concerning another law firm and State Farm's relations with that firm.
>
>Additionally, State Farm objects for the reason the request is not calculated to lead to the discovery of relevant evidence and is unduly burdensome. Further the burden to identify and produce the information greatly exceeds and is grossly disproportional to any benefit the information could ever produce.

In support of its objection that Request 29 seeks documents protected by the attorney-client privilege, Plaintiff has submitted the Affidavit of James Sanders (ECF 150, Ex. F.), an attorney with the Wallace Saunders law firm. It includes the following statements:

>5. State Farm has retained Wallace Saunders to pursue subrogation claims for over 30 years.
>
>6. Affiant and other attorneys at Wallace Saunders regularly provide legal advice to State Farm in matters that have not reached the lawsuit stage.
>
>. . .
>
>8. In or about January 2014, Wallace Saunders was retained by State Farm to take over the handling of a number of subrogation cases from the law firm of Gates, Shields & Ferguson, P.A.
>
>9. That after the subrogation cases were transferred to Wallace Saunders, affiant and other attorneys at Wallace Saunders litigated the subrogation cases, gave State Farm legal advice with respect to those matters and in many instances negotiated a settlement in the matter."

(*Id.* at 1, 2.) Given this affidavit, the Court sustains the objection that Request 29 is objectionable on its face in asking for documents protected by the attorney-client objection.

Request 30 asks for all "All emails between John Fuchs or Jill Earley and any Wallace Saunders' attorney since March 13, 2013, related to the following topics: . . . ." The request continues to designate four different topics. Plaintiff objected on grounds the request invades attorney-client privilege and work product, seeks highly confidential materials concerning

another law firm, is not reasonably calculated to lead to the discovery of admissible evidence, and is unduly burdensome. In its memorandum, however, Plaintiff simply characterizes the request as having "no reasonable basis" and as irrelevant to any material issue. Plaintiff in its memoranda has poorly, if at all, supported its objections. But the Court nevertheless finds this request inadequately supported as to relevancy of emails of either John Fuchs or Jill Earley and on its face unduly burdensome, seeking information "related to" the four topics in question. Accordingly, applying Fed. R. Civ. P. 26(b)(1), the Court finds that the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case and the importance of the discovery in resolving the issues.

Request 31 asks Plaintiff to produce documents and records, including emails, memos and notes regarding its directive that its legal counsel not pursue a claim for punitive damages on behalf of itself or its insured(s) in subrogation cases. State Farm objected upon grounds of irrelevance. Defendant has not shown relevancy for such a wide sweep of documents to be produced. If Plaintiff indeed has a directive against pursuit of punitive damages, as the request suggests, that specific fact may be relevant to the counterclaims. That possibility, however, does not create relevancy for all other documents "regarding" such a directive. The Court will overrule the objection and grant the motion, therefore, to the limited extent that Plaintiff shall produce any document or record that sets forth a policy not to pursue a claim for punitive damages.

Request 32 asks Plaintiff to produce, "All documents and emails between any State Farm Subrogation Services employee, John Fuchs, or Jill Earley with any non-GSF lawyer related to the claims of Willowbrook (Claim Nos. 16-R57-7217 & 16-R57-9344)." Plaintiff objected to

13

the request upon grounds of attorney-client privilege, irrelevancy and the excessive burden for identifying and producing the requested items.

Request 33, similar to 32, asks for "All documents and emails between any State Farm Subrogation Services employee, John Fuchs, or Jill Earley with Mark Cero or any attorney from the law firm of Cozen & O'Connor related to the claim of Wurth (Claim No. 25-J258-116)." Request 34 similarly asks for "All written communications between State Farm recovery unit personnel and John Fuchs or Jill Earley related to any of the State Farm Claim Files listed in the list of Pending Subrogation Claims referenced above." Request 35 similarly asks for "All communications between State Farm recovery unit personnel and any Wallace Saunders attorney related to any of the State Farm Claim Files listed in the list of Pending Subrogation Claims referenced above."

Plaintiff State Farm objected to Requests 32 through 35 on several grounds: invasion of attorney-client privilege (except as to Request 34); undue burden, disproportionate to any benefit, to identify and produce the requested information. The Court sustains the objection that the documents sought by Request 32 are protected by the attorney-client privilege.[2] The request seeks communications between Plaintiff and attorneys other than Defendant with regard to the "claims of Willowbrook." In its opposing memorandum, Plaintiff provided a factual description of such communications, sufficient to support its objection. Those facts include a recommendation by Defendant not to pursue the Willowbrooke claims, which in turn led to seeking a second opinion by other counsel. The reply memorandum of Defendant does not take issue with this explanation.

---

[2]The opposing memorandum of Plaintiff mistakenly identifies Request 32 as Request 33 (ECF 150 at 23).

The Court also sustains the objections that Requests 32 through 35 impose upon the responding party, here the Plaintiff, an undue burden, disproportionate to whatever limited benefit, if any, might accrue to Defendant from the requested production.  The Court finds Fed. R. Civ. P. 26(b)(1), cited above, again to be applicable.  As already noted, the rule calls upon the Court to consider to what extent the requested discovery is "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Applying this rule of proportionality, the Court finds that it supports the objections of undue burden.  Accordingly, it denies the motion with regard to Requests for Production 32 through 35.

Requests for Production 36, 37, 38 and 40 seek production of documents that relate to the retention of the law firm of Wallace Saunders to handle the subrogation claims of Plaintiff:

> 36.  All documentation submitted by Wallace Saunders to State Farm after March 13, 2013 so that Wallace Saunders could be approved and added to the list of Legal Services Program Law Firm to handle subrogation matters in Kansas and Missouri.
>
> 37.  A copy of the Attorney Subrogation Collection and Litigation Master Retainer Agreement, plus the Request for Services and all attachments, between State Farm and Wallace Saunders.
>
> 38.  A copy of any engagement letter entered into between State Farm and Wallace Saunders regarding any of the cases listed in the Pending Subrogation Claims referenced above.
>
> . . .
>
> 40. A complete copy of the "Relationship File" maintained by State Farm for the law firm of Wallace Saunders."

15

(ECF 137-2 at 17, 18.)  Plaintiff objected upon the grounds of irrelevancy and undue burden of the production.  For reasons already discussed above, the Court sustains the objections.  This litigation does not involve whatever business Plaintiff may have with law firms other than Plaintiff.

Request for Production 41 asks for production of "A copy of State Farm Enterprise Policy which requires State Farm Subrogation Services or its designated attorneys to obtain permission from the State Farm General Counsel prior to proceeding with a punitive damages count in a State Farm Subrogation matter."  Plaintiff objected upon grounds of irrelevancy.  The Court sustains the objection.

### III.  REQUESTS FOR ADMISSIONS

The motion contends that State Farm asserted incorrect objections and otherwise failed to respond to Defendant's Requests for Admissions, numbers 1, 2 and 4 through 14.  Requests 1 and 2 ask respectively for admissions as to how Wallace Saunders charges State Farm for handling subrogation claims, whether upon an hourly rate (Request 1) or upon a contingency of any recoveries (Request 2).  Request 4 asks Plaintiff to admit that Wallace Saunders has not been required to execute an Attorneys Subrogation Collection and Litigation Master Retainer Agreement prior to August of 2014.  Request 5 asks that State Farm admit that it "does not prohibit LSP lawyers from representing insureds in extra contractual or extra damage claims, which are outside the value of State Farm's Subrogation Claim."  Plaintiff objected to these four requests on grounds of irrelevancy.  Defendant continues to argue they are relevant.  Yet its arguments fail to provide any persuasive rationale for relevancy of whatever arrangements or agreements Plaintiff may have either with Wallace Saunders or with any other law firms.  The Court sustains the objection for reasons already stated.

Request for admissions 6, 7 and 8 ask respectively for Plaintiff to admit that it and its staff members in May 2013 sent or issued to Defendant written communications with regard to the termination of new referrals of subrogation claims, but with its continued handling of subrogation files already referred to it.  State Farm objected to all three requests upon the grounds they are argumentative, because they do not include all of the communications to which they refer.  Plaintiff cured its own objections, however, by including as part of its responses exhibits that purportedly contain the entire texts of the communications in question.  The Court finds these responses to be adequate and the objections moot.

Request for admissions 9 asks Plaintiff to "Admit that State Farm received an independent review and recommendation regarding the Willowbrook Villas claims from the firm of Cozen & O'Connor, and in reliance thereon, State Farm concluded it was not going to pursue subrogation of the case."  Plaintiff objected that the request invades the attorney-client privilege and is argumentative.  The Court overrules the objections.  The request does not ask for the substantive content either of the review or the recommendation, but only for whatever action State Farm took after receiving them.  Accordingly, it shall admit or deny Request 9, consistent with Fed. R. Civ. P. 36.

Request for admissions 10 asks for an admission "that the advice Jennifer Poynter provided to State Farm on the Willowbrook Villas Claims provided was independent advice that was very similar to the advice GSF provided State Farm and Ms. Poynter did tell State Farm that she thought it would be difficult to recover. (Gates 737-779)."  Plaintiff objected to the request upon grounds it invades its attorney-client privilege and is argumentative.  The Court overrules the objections.  It finds nothing to identify Ms. Poynter as an attorney.  Nor does it find anything to confirm that her alleged statement was indeed legal advice, within the realm of any inquiry by

Plaintiff, rather than more simply a voluntary, unsolicited personal opinion. The Court will not assume these underlying facts. Plaintiff did not carry its burden simply to provide them. Accordingly, it shall provide a further response to admit or deny Request 10.

Requests for admissions 11 and 12 asked Plaintiff to admit it received notices of attorneys liens of Defendant with regard to the subrogation claims it had handled and, as to "eleven claim files," State Farm does not assert any defects. Plaintiff objected only to Request 12 and solely upon grounds that it is compound. It nevertheless answered both requests in part and denied them in part. The responses adequately meet the requests.

Requests 13 and 14 both address the termination by State Farm of its attorney-client relationship with Defendant. Number 13 asks for an admission that the termination was "without cause." Number 14 asks for an admission that State Farm did not terminate the relationship for cause. Plaintiff admitted both requests in part and denied them in part. The Court finds both responses are adequate.

To summarize, the Court grants the motion for Plaintiff to provide additional responses to Requests for Admissions 9 and 10. It denies the motion with regard to the other requests for admissions.

## IV.  SUMMARY

For the reasons herein stated, the Court grants in part and denies in part Defendant's Motion to Compel Discovery Responses (ECF 136). Within 30 days of the date of this Memorandum and Order, Plaintiff State Farm Mutual Automobile Insurance Company shall provide additional discovery as follows: Plaintiff shall further answer Defendant's First Interrogatories 1, 2 and 6. Plaintiff shall produce documents responsive to Defendant's First Request for Production of Documents, requests 24, 25, 27, 28, 31 and to a limited extent 38.

Plaintiff shall further respond to Defendant's First Request for Admissions, requests 9, 10.  The Court denies the remainder of the motion.

**IT IS SO ORDERED.**

Dated December 10, 2015, at Kansas City, Kansas.

*S/ Gerald L. Rushfelt*
Gerald L. Rushfelt
U.S. Magistrate Judge
