# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

STATE FARM FIRE AND CASUALTY
COMPANY, and STATE FARM MUTUAL
AUTOMOBILE INSURANCE COMPANY

   *Plaintiffs,*

 vs.            Case No. 14-CV-02392-EFM-GLR

GATES, SHIELDS & FERGUSON, P.A.,

    *Defendant.*

## MEMORANDUM AND ORDER

  This case arises out of a contract dispute between Plaintiffs State Farm Fire and Casualty

Company and State Farm Mutual Automobile Insurance Company (collectively, "State Farm")

and Defendant Gates, Shields, & Ferguson, P.A. ("GSF").  In August 2009, the parties entered

into an Attorney Subrogation Collection and Litigation Master Retainer Agreement (the

"Agreement") in which GSF agreed to provide legal services to State Farm and/or its insureds

for subrogation claims.  State Farm terminated the agreement in January 2014 and subsequently

reassigned the subrogation cases GSF was handling to another law firm.  The parties dispute

whether State Farm owes GSF attorneys' fees for the subrogation cases it was handling before

termination.

The parties have filed cross-motions for summary judgment (Docs. 167 and 169) that are currently pending before the Court.  In addition, GSF has filed a Motion to Strike State Farm's Memorandum in Opposition to GSF's Motion for Summary Judgment (Doc. 199) and a Motion to Strike the Affidavit of Jill Earley (Doc. 202).  As set forth below, the Court grants State Farm's summary judgment motion and denies GSF's summary judgment motion.  It also denies GSF's Motion to Strike State Farm's Memorandum in Opposition and Motion to Strike the Affidavit of Jill Earley.

I.  **GSF's Motion to Strike State Farm's Memorandum in Opposition (Doc. 199)**

GSF asks the Court to strike State Farm's Memorandum in Opposition to GSF's Motion for Summary Judgment because it exceeds the page limit in the Court's Standing Order.  The Court's Standing Order provides that "[m]emoranda in support of [Rule 56] motions shall be limited in total to 50 pages."  Response memoranda are subject to the same rule.

State Farm's Memorandum in Opposition is fifty-five pages and thus exceeds the maximum allowable page limit.  Ordinarily, the Court would grant GSF's motion and require State Farm to re-file its Memorandum in Opposition in conformance with page limitation set forth in the Standing Order.  However, the parties' motions have been ripe since February, and the Court finds that granting such motion would result in a delay in litigation that is not in the interest of justice.  Furthermore, the five additional pages in State Farm's Memorandum include the Cover Page, Table of Contents, and Table of Authorities.  These pages provide little information other than serving as a reference guide for the parties.  Therefore, GSF's Motion to Strike is denied.

II.   **The Parties' Cross-Motions for Summary Judgment (Docs. 167 and 169) and GSF's Motion to Strike the Affidavit of Jill Earley (Doc. 202)**

A.   **Factual and Procedural Background**

1.   **Evidentiary Issues - GSF's Alleged Lack of Authentication**

State Farm contends that the Court should disregard many of GSF's Uncontroverted Statements of Fact because the documents cited by GSF in support of these facts have not been authenticated. Specifically, State Farm attacks GSF's citation to its counterclaims, State Farm's answer, GSF's interrogatory responses, and GSF's responses to requests for production. In response, GSF claims that it is not necessary for it to authenticate these documents because GSF is both the party and the attorney. GSF argues that, because the crux of the litigation involves the attorney who has signed and produced the documents in question, the signature of the attorney on these documents is enough to authenticate them.

The Court disagrees. Under District of Kansas Local Rule 56.1(d), all facts upon which a motion is based "must be presented by affidavit, declaration under penalty of perjury, and/or relevant portions of pleadings, depositions, answers to interrogatories, and responses to requests for admissions." Unauthenticated documents, once challenged, cannot be considered by a court in determining a summary judgment motion.[1] The fact that GSF is represented by one of its own attorneys does not excuse it from these rules. As a member of the Kansas bar, GSF's attorney should have been aware of this local rule and should have followed it when preparing GSF's Motion for Summary Judgment.

To the extent GSF cites its responses to requests for production or documents produced in response to those requests, the Court will disregard these facts, as they have not been properly

---

[1] *Bell v. City of Topeka*, 496 F. Supp. 2d 1182, 1185 (D. Kan. 2007).

authenticated.  With regard to the pleadings, GSF's counterclaims are not verified, and therefore, the Court will only consider those facts that State Farm admitted in its answer.[2]  Finally, the Court will allow GSF to rely on its interrogatory responses in support of its Uncontroverted Statements of Fact, as this is allowed under Rule 56.1(d).

### 2.     Evidentiary Issues- GSF's Motion to Strike Earley's Affidavit

GSF asks the Court to strike the affidavit of Jill Earley, which State Farm offered in support of its Memorandum in Opposition to GSF's Motion for Summary Judgment.  Earley is a staff assistant and analyst on State Farm's vendor performance team.  As part of her employment duties, she managed the relationship between State Farm and GSF.  GSF contends that the Court should strike the affidavit because it is a sham and because Earley is incompetent to testify.

State Farm relies on Earley's affidavit to controvert GSF's Statement of Fact numbers 62-74, 76, and 84 and to support its Statement of Additional Facts numbers 130-134.  However, the affidavit is unnecessary to controvert GSF's facts 62-74, and 76 because the Court will not consider them in determining GSF's motion for summary judgment.  Facts 62-74 have not been supported by properly authenticated documents, and fact 76 is not a statement of material fact.  Therefore, the only facts that are at issue are GSF fact 84 and State Farm's additional statement of facts 130-134.

GSF fact 84 states that State Farm is in possession of the detailed and itemized written request for reimbursement of reimbursable claim expenses incurred by GSF in pursuit of the subrogation claims.  State Farm's additional facts 130-134 generally state the following:  (1) State Farm did not receive any funds within thirty days of January 8, 2014, on any of the matters

---

[2] *Fowler v. S. Bell Tel. & Tel. Co.*, 343 F.2d 150, 154 (5th Cir. 1965) ("[V]erified pleadings may in some circumstances be treated as affidavits in support of a motion for summary judgment.").

at issue in this lawsuit; (2) State Farm has paid all the expenses GSF seeks to recover with the exception of one $100 charge; and (3) GSF received attorneys' fees of approximately $225,000 on subrogation recoveries made between May 1, 2013, and January 31, 2014.

None of these facts are material to the determination of the parties' motions.  GSF attempts to create an issue regarding the expense payments by stating that it is the timing of the expense payments and not the fact that there is one payment left to be made that is a key issue before the Court.  GSF argues that because State Farm made the expense payments more than thirty days after termination, it has chosen to selectively enforce the Agreement.  GSF, however, does not cite properly authenticated documents in support of its statement that State Farm made expense payments more than thirty days after termination, and Earley's affidavit is not offered to controvert this fact.  GSF's motion thus appears futile because none of the facts at issue are determinative to the parties' summary judgment motions.

Regardless of the futility of GSF's motion, the Court finds no basis to strike Earley's affidavit from the record.  The affidavit is not, as GSF asserts, a sham affidavit.  The Tenth Circuit considers the following in determining whether an affidavit creates a sham fact issue: (1) whether the affiant was previously cross-examined; (2) whether the affiant had access to the pertinent evidence at the time of his earlier testimony; and (3) whether the earlier testimony reflects confusion that the affidavit attempts to explain.[3]  In this case, GSF only inquired about one unidentified expense in Earley's deposition.  Earley explained that because she could not see any of the invoices involved, she could not identify what they were regarding.  She further explained that the responsibility of paying such invoices is with a different State Farm employee.

---

[3] *Law Co., Inc. v. Mohawk Constr. & Supply Co., Inc.*, 577 F.3d 1164, 1169 (10th Cir. 2009) (quoting *Ralston v. Smith & Nephew Richards, Inc*., 275 F.3d 965, 973 (10th Cir. 2001)).

Based on this testimony, Earley was not cross-examined about the timing of the expense payments. Nor did she have access to pertinent evidence at the time of her deposition. Therefore, her affidavit does not create a sham issue of fact.

GSF also has not met its burden to show that Early is incompetent to testify based on a prior head injury that may affect her memory. GSF cites no authority for its argument that Earley is incompetent based on her statements in her deposition. Furthermore, Earley's affidavit is not made from her recollection. As is common with summary judgment proceedings, Earley looked into certain facts based on documents that were provided to GSF and then swore to the results of her inquiry. The Court therefore denies GSF's motion to strike Earley's affidavit.

### 3.    Undisputed Facts

Plaintiffs State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company are Illinois insurance corporations with their principal place of business in Bloomington, Illinois. Defendant GSF is a Kansas professional association located in Overland Park, Kansas. GSF operates as a law firm.

State Farm is a property and casualty insurer. It issues policies of automobile, homeowners, and business insurance in Missouri and Kansas. Many policies issued by State Farm include coverage for physical damage to an insured's real or personal property. From time to time, real or personal property that State Farm insures sustains damages as a result of the fault of one or more persons or entities. In such circumstances, State Farm may assert a subrogation claim against the wrongdoer to recover the amount it paid on account of the wrongdoer's fault. State Farm, as subrogee, pays the property losses of the insured and then steps into the shoes of the insured, as subrogor, and asserts a subrogation claim against the wrongdoer to recover the

amount it paid on account of the damage to the insured's real or personal property.  From time to time, State Farm employs attorneys to represent it or its insureds in these subrogation claims.

### a.  The Agreement

State Farm and GSF entered into an ATTORNEY SUBROGATION COLLECTION AND LITIGATION MASTER RETAINER AGREEMENT (the "Master Retainer Agreement"). The parties also executed a REQUEST FOR SERVICES—OTHER INSURANCE CARRIER (OIC) LITIGATION ("Request for Services").  The parties also accepted Work Rules, which were part of the Request for Services.  The Master Retainer Agreement, the Request for Services, and the Work Rules are all integrated together to define the rights, responsibilities, and expectations of the parties at the time they were executed in August 2009.  The three documents are collectively referred to as "the Agreement."

The Agreement sets for the terms under which State Farm would retain GSF to provide representation to State Farm or its insureds to make subrogation recoveries.  The Agreement contains the following provision regarding the referral of State Farm's subrogation cases:

> 10.  <u>CASE REFERRALS</u>.  State Farm, at its sole discretion, shall refer to Law Firm subrogation claim files for collection and/or litigation.  State Farm authorizes Law Firm to pursue collections and litigation on the referred claim files per the Work Rules as defined in any Request for Services.

Other pertinent terms of the Agreement include the waiver, termination, and survival provisions, which state as follows:

> 21.  <u>NO WAIVER</u>.  It is expressly understood that if either party on any occasion fails to adhere to any term of this Agreement, and the other party does not enforce that term, the failure to enforce on that occasion shall not prevent enforcement on any other occasion.
>
> . . .

23.  <u>TERMINATION</u>.  Notwithstanding the termination provisions in Section 5, Section 12 and Section 26, Law Firm Agrees to the following:

. . .

b.      Either party may terminate this Agreement by providing Written Notice to the other party.  Upon the effective date of termination as provided herein, Law Firm shall cease all collection/litigation activity on behalf of State Farm concerning those files referred pursuant to this Agreement.  In addition, and upon the effective date of termination as provided herein, Law Firm agrees to forward all monies received by it at any time in the future to State Farm in regards to its past collection/litigation activity on behalf of State Farm.  Law Firm expressly grants State Farm the right to negotiate checks, drafts or money orders payable to Law Firm which were forwarded to State Farm by Law Firm after the effective date of termination.

        . . .

e.      If State Farm terminates this Agreement under subsection b. above of this Section 23, the effective date of termination shall be the date listed within Law Firm's Written Notice of termination from State Farm.

        . . .

g.      Regardless of the reason for termination, upon termination of this Agreement by either party under this Section 23 and anything in the Agreement to the contrary notwithstanding, Law Firm shall receive any fee or expense reimbursement to which it would have been entitled under this Agreement notwithstanding termination, on any fund State Farm receives on an account within thirty (30) days of the effective date of termination.  Law Firm shall not entitled to receive any fee on any funds State Farm receives more than thirty (30) days after the effective date of termination, subject to the provisions in Section 27.

. . .

27.  <u>RETURN OF FILES</u>.  Upon termination due to a death or disability of an attorney or upon receipt of such Written Notice to terminate this Agreement for any reason, Law Firm shall immediately cease all collection/litigation activity on behalf of State Farm concerning those files referred pursuant to this Agreement. . . . If requested to do so, Law Firm agrees to cooperate with State Farm in transferring files and to make its outside information technology vendors available to State Farm as needed to assist in transferring files to State Farm or to another law firm.

. . .

34.  <u>SURVIVAL</u>.  The following sections shall survive termination of the entire Agreement:  Compliance with Applicable Laws, Use Limitations, Separate Bank Account for State Farm Funds/Right to Endorse, Independence Contractor/Performance, Applicability to Subcontractors, Confidentiality, Hold Harmless/Indemnification, Arbitration, Termination, Limitation of Liability, Use of State Farm Name, Right to Audit, Severability, Governing Law and Survival.

The final paragraph states that the Agreement "shall be binding upon each of the parties hereto, their respective successors, and to the extent permitted their assigns and cannot be amended or otherwise modified, except as agreed to in writing by each of the parties hereto."   The Agreement was amended on February 3, 2011, by the addition of a new Section 28 relating to taxes.  Both GSF and State Farm signed the amendment.

The Request for Services contains the following pertinent provision:

3.       Legal Fees- for all files referred after August 31, 2009

Payable per the terms within this Agreement and those listed below:

- Collection prior to filing suit:  25%

- Collection after filing suit:  30%

The Request for Services also states that should State Farm's need for GSF's services change, State Farm could terminate GSF's services at that time at no additional expense to State Farm.

On occasion, State Farm arranged to pay GSF an hourly fee for investigative work in claims where State Farm had not yet paid or established a responsible party.  In those instances, conversations would have been had with State Farm employees on specific claim files and a separate attorney fee engagement letter was executed.

**b.**      **Termination of the Agreement**

Between the period of August 2009 and March 2013, State Farm referred numerous subrogation matters to GSF for handling, and GSF earned over $1 million in fees.  On March 25, 2013, State Farm advised GSF that it was suspending assignments of new subrogation files to GSF.[4]  On or about May 3, 2013, State Farm sent GSF a letter stating in part:

> As discussed on Friday, April 26th, State Farm Subrogation Services has elected to cease referrals of new subrogation files to your law firm for an indefinite period of time.
>
> We have agreed that your law firm will continue to handle the subrogation files currently in your inventory to conclusion.  These files will continue to be handled per the terms and conditions of the existing Master Retainer Agreement and Request for Services – Work Rules.

On May 6, 2013, State Farm's Subrogation Services issued a separate internal memo stating that GSF would continue to handle all pending claim files in its inventory.

On or about January 8, 2014, State Farm terminated the Agreement by emailing a letter of termination to GSF.  Pursuant to paragraph 23.e. of the Master Retainer Agreement, the effective date of termination was January 8, 2014.  State Farm informed GSF that it decided to "terminate" its relationship with GSF and directed that all current pending subrogation claim files (the "Pending Subrogation Claims") immediately be transferred to the law firm of Wallace Saunders.  GSF transferred the Pending Subrogation Claims and complied with State Farm's request to wind up the business relationship between GSF and State Farm.

At the time of termination, there were thirteen Pending Subrogation Claims in State Farm's inventory of subrogation cases.  State Farm eventually received funds on seven of the

---

[4] State Farm suspended assignment of new claim files to GSF because one of the attorneys handling a subrogation claim misrepresented to the court reasons why he had not complied with the court's pretrial deadlines. This conduct was not a basis, however, for State Farm's eventual termination of the Agreement.  The parties agree that State Farm did not terminate the Agreement for cause.

thirteen Pending Subrogation Claims, but none of these funds were received within thirty days of the Agreement's termination.[5]  GSF subsequently filed attorneys' liens for the attorneys' fees and expenses on the Pending Subrogation Claims and sent State Farm a letter notifying it of these liens.  State Farm has paid all but one of the reimbursable claim expenses that GSF incurred in pursuit of the Pending Subrogation Claims.

### c.      This Lawsuit

On August 7, 2014, State Farm filed this lawsuit seeking a declaratory judgment that under the Agreement GSF has no right to attorneys' fees on any settlement or judgment secured in any of the Pending Subrogation Cases and that GSF's lien notices are invalid.  In response, GSF asserts several counterclaims.  First, GSF seeks a declaratory judgment that it is entitled to attorneys' fees for the professional legal services it rendered on the Pending Subrogation Claims. GSF also asserts claims quantum meruit, promissory estoppel, unjust enrichment, breach of contract, and a claim for the enforcement and foreclosure of its attorneys' liens.  The parties have filed cross-motions for summary judgment, which are ripe for the Court's decision.

### B.      Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.[6] A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.[7]  The movant bears the initial burden of proof and must show the lack of evidence on an essential

---

[5] The disputed contingency fee for these seven matters totals $228,797.81.

[6] Fed. R. Civ. P. 56(c).

[7] *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006).

element of the claim.[8]  If the movant carries this initial burden, the nonmovant that bears the burden of persuasion at trial may not simply rest on its pleading but must instead "set forth specific facts" that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant.[9]  These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits—conclusory allegations alone cannot survive a motion for summary judgment.[10]  The Court views all evidence and reasonable inferences in the light most favorable to the party opposing summary judgment.[11]

Though the parties in this case filed cross-motions for summary judgment, the legal standard remains the same.[12]  Each party retains the burden of establishing the lack of a genuine issue of material fact and entitlement to judgment as a matter of law.[13]  Each motion will be considered separately.[14]  To the extent the cross-motions overlap, however, the court may address the legal arguments together.[15]  Finally, summary judgment is not a "disfavored procedural shortcut," but is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' "[16]

---

[8] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

[9] *Id.* (citing Fed. R. Civ. P. 56(e)).

[10] *Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[11] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

[12] *City of Shawnee v. Argonaut Ins. Co.*, 546 F. Supp. 2d 1163, 1172 (D. Kan. 2008).

[13] *United Wats, Inc. v. Cincinnati Ins. Co.*, 971 F. Supp. 1375, 1381-82 (D. Kan. 1997) (citing *Houghton v. Foremost Fin. Servs. Corp.*, 724 F.2d 112, 114 (10th Cir. 1983)).

[14] *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000).

[15] *Berges v. Standard Ins. Co.*, 704 F. Supp. 2d 1149, 1155 (D. Kan. 2010).

[16] *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

## C.      Analysis

The parties have filed cross-motions for summary judgment regarding whether GSF is entitled to recover attorneys' fees under the Agreement for the professional services it rendered for the Pending Subrogation Claims and whether GSF's attorneys' liens are valid.  The legal issues raised in the parties' motions largely overlap.  Therefore, the Court will address them together rather than separately.

### 1.      Choice of Law

In diversity cases, district courts generally apply the substantive law, including the choice of law rules, of the forum state.[17]  When a contract incorporates a choice of law provision, Kansas courts generally effectuate the law chosen by the parties to control the agreement.[18]  Here, the Agreement contains a choice of law provision stating that it will be governed by Illinois law.  The parties agree that Illinois law should be applied to this case, and therefore the Court will look to it in deciding the parties' summary judgment motions.

### 2.      Paragraph 23.g. of the Agreement

State Farm contends that GSF is not entitled to attorneys' fees under the Agreement for the professional services it rendered in the Pending Subrogation Claims.  The central dispute in this case is the enforceability of paragraph 23.g. of the Agreement.  This paragraph states:

> Regardless of the reason for termination, upon termination of this Agreement by either party under this Section 23 and anything in the Agreement to the contrary notwithstanding, Law Firm shall receive any fee or expense reimbursement to which it would have been entitled under this Agreement notwithstanding termination, on any fund State Farm receives on an account within thirty (30) days of the effective date of termination.  Law Firm shall not be entitled to receive

---

[17] *BancOklahoma Mortg. Corp. v. Capital Title Co.*, 194 F.3d 1089, 1103 (10th Cir. 1999) (citing *Barrett v. Tallon*, 30 F.3d 1296, 1300 (10th Cir. 1994)).

[18] *Brenner v. Oppenheimer & Co.*, 273 Kan. 525, 539, 44 P.3d 364, 375 (2002).

any fee on any funds State Farm receives more than thirty (30) days after the effective date of termination, subject to the provisions in Section 27.[19]

State Farm asks the Court to declare that under this provision, GSF has no right to attorneys' fees on any settlement or judgment secured in any of the Pending Subrogation Claims more than thirty days after termination of the Agreement.  GSF also seeks summary judgment on this provision, asking the Court to declare it invalid, illusory, and unenforceable.

### a.    Paragraph 23.g. Is Enforceable.

State Farm contends that paragraph 23.g. is enforceable based on the basic rules of contract interpretation in Illinois.  These rules provide that:

> In construing a contract, the primary objective is to give effect to the intention of the parties.  A court will first look to the language of the contract itself to determine the parties' intent.  A contract must be construed as a whole, viewing each provision in light of the other provisions.   The parties' intent is not determined by viewing a clause or provision in isolation, or in looking at detached portions of the contract.
>
> If the words in the contract are clear and unambiguous, they must be given their plain, ordinary, and popular meaning.[20]

State Farm further argues that paragraph 23.g. is enforceable based on Illinois case law construing attorney fee contracts.  The Illinois Supreme Court has specifically held:  "Where a client and his attorney have an express contract for compensation, that contract will control the amount of compensation due the attorney from the client and quantum meruit principles are not involved, at least where the fee provided for by the contract was not excessive or fraudulent."[21] According to State Farm, the language of paragraph 23.g. is clear and unambiguous, and thus,

---

[19] Section 27 concerns the return of files and is not relevant to the dispute between the parties.

[20] *Thompson v. Gordon*, 948 N.E.2d 39, 47 (Ill. 2011) (internal citations omitted).

[21] *People v. Kinion*, 454 N.E.2d 625, 629-30 (Ill. 1983) (internal citations omitted).

GSF cannot recover any fees on any funds State Farm received more than thirty days after termination.

In response, GSF offers several reasons as to why paragraph 23.g. is invalid and unenforceable. First, GSF contends that under Illinois law, the Agreement and paragraph 23.g. ceased to exist upon termination. Second, GSF contends that the Agreement is ambiguous. Third, GSF argues that paragraph 23.g. is illusory. Fourth, GSF claims that State Farm selectively enforced the Agreement, and fifth, GSF argues that State Farm violated the covenant of good faith and fair dealing. The Court will address each of GSF's arguments below.

### i. Paragraph 23.g. Continued to Exist at Termination.

GSF argues that under Illinois law, paragraph 23.g. ceased to exist when State Farm terminated the Agreement. In support of this argument, GSF cites a line of Illinois cases providing that "when a client terminates a contingent-fee contract, the contract ceases to exist between the parties . . . and the contingency term, whether the attorney wins, is no longer operative."[22] These cases also state that "[a] client cannot terminate the agreement and then resurrect the contingency term when the discharged attorney files a fee claim. Either [the contract] wholly stands or totally falls."[23] Furthermore, when an attorney is discharged without cause, the attorney may recover in quantum meruit the reasonable value of the services rendered.[24]

At first glance, this law appears to directly conflict with the case law cited by State Farm holding that when the attorney fee contract controls the attorney's compensation, the doctrine of

---

[22] *In re Estate of Callahan*, 578 N.E.2d 985, 988 (Ill. 1991).

[23] *Id.* (internal quotation marks and citation omitted).

[24] *Id.*

quantum meruit does not apply.  However, upon further review of the Agreement, the Court

finds the cases that GSF cites inapplicable and unpersuasive.  Contrary to GSF's argument,

neither the Agreement nor paragraph 23.g. ceased to exist upon termination.  Illinois law

recognizes the validity of survival provisions in contracts.[25]  And the Agreement in this case

contains a survival provision that states that the "Termination" section survives termination of

the Agreement.  There is only one "Termination" section in the Agreement, and this is set forth

in paragraph 23.      None of the cases cited by GSF involve contingency fee contracts with

survival provisions.  In fact, only one of the cases cited by GSF contains contractual language

addressing attorney compensation when an attorney is succeeded by another, and in that case, the

contract explicitly stated the former attorney could recover in quantum meruit.[26]  This Court has

not been able to locate any analogous cases as well.  However, the Court sees no reason why the

survival provision in the Agreement should not be enforced, despite the fact that it prevents GSF

from recovering its contingency fees.  "A court will not refuse to enforce a contract merely

because it later turns out to be less favorable than one of the parties had anticipated."[27]

Therefore, the Court finds that paragraph 23.g. continues to survive termination of the

Agreement.[28]

---

[25] See, *e.g., Gateway Sys., Inc. v. Chesapeake Sys. Sols., Inc.*, 836 F. Supp. 2d 625, 639-40 (N.D. Ill. 2011);
*Verson Corp. v. Verson Int'l. Group plc*, 1994 WL 6867, at ** 3-4 (N.D. Ill. Jan. 10, 1994).

[26] *See Patterson v. Burge*, 2008 WL 4875791, at *2 (N.D. Ill. Aug. 4, 2008).

[27] *Verson Corp.*, 1994 WL 6867, at * 4.

[28] The issue of whether GSF can recover under the doctrine of quantum meruit is tied to GSF's argument
that the Agreement ceased to exist upon termination.  The Court will address whether GSF can recover under this
theory when it addresses GSF's counterclaims.

### ii.  Paragraph 23.g. Is Not Ambiguous.

GSF contends that the Agreement is ambiguous because the two sentences of paragraph 23.g. are inherently inconsistent and conflicting, thus creating an ambiguity on their face.  Under Illinois law, a contract is ambiguous if its words are reasonably susceptible to more than one meaning.[29]  A court will find ambiguity if the contract language is "obscure in meaning through indefiniteness of expression."[30]  However, "[a] contract is not ambiguous merely because the parties disagree on its meaning."[31]

GSF's argument as to why paragraph 23.g. is ambiguous is difficult to understand at best, perhaps because it is misconstruing State Farm's interpretation of it.  The last sentence of paragraph 23.g. states: "Law Firm shall not be entitled to receive any fee on any funds State Farm receives more than thirty (30) days after the effective date of termination."  According to GSF, State Farm contends that the last sentence of paragraph 23.g. prohibits GSF from recovering any compensation, not just a contingency fee on the Pending Subrogation Claims.  GSF, on the other hand, contends that this language only prohibits it from receiving a contingency fee, not the reasonable value of its services received.

The problem with GSF's argument is that both parties seem to agree that the language of 23.g. prevents GSF from recovering a contingency fee on any funds State Farm receives more than thirty days after termination.  State Farm is not arguing that this provision prevents GSF from recovering the reasonable value of its services received.  Instead, State Farm is arguing that

---

[29] *Thompson v. Gordon*, 948 N.E.2d 39, 47 (Ill. 2011) (citing *Gallahger v. Lenhart*, 874 N.E.2d 43, 58 (Ill. 2007).

[30] *Berryman Transfer and Storage Co., Inc. v. New Prime, Inc.*, 802 N.E.2d 1285, 1287 (Ill. App. 2004) (citing *Shields Pork Plus, Inc. v. Swiss Valley Ag Serv.*, 767 N.E.2d 945, 949 (Ill. 2002).

[31] *Hot Light Brands, LLC v. Harris Realty, Inc.*, 912 N.E.2d 258, 264, (Ill. App. 2009) (citing *Baxter Int'l, Inc. v. Am. Guar. & Liability Ins. Co.*, 861 N.E.2d 263, 267 (Ill. 2006)).

GSF cannot recover the reasonable value of its services rendered because the Agreement does not contain any provision allowing it to do so, and GSF cannot recover on its equitable counterclaims or breach of contract counterclaim.  GSF is attempting to create an ambiguity by claiming that the parties disagree as to what the language means.  But, as stated above, the Court will not find ambiguity on this basis.[32]  The Court finds paragraph 23.g. to be neither susceptible to more than one meaning nor obscure.  Thus, it declines to find paragraph 23.g. ambiguous.

### iii.  Paragraph 23.g. Is Not Illusory.

GSF next contends that paragraph 23.g. is unenforceable because it violates public policy and the policy against illusory contracts.  Under Illinois law, "public policy strongly favors the freedom to contract."[33]  A contract provision will be held to violate public policy if "it is injurious to the interests of the public, contravenes some established interest of society, violates some public statute, is against good morals, tends to interfere with the public welfare or safety, or is at war with the interest of society or in in conflict with the morals of the time."[34]  Whether an agreement is contrary to public policy depends on the specific facts and circumstances of the case.[35]

An illusory promise contravenes public policy and is unenforceable.[36]  GSF argues that paragraph 23.g. is illusory for lack of consideration.  GSF defines an illusory contract as "an

---

[32] *Id.*

[33] *Bruzas v. Richardson*, 945 N.E.2d 1208, 1213 (Ill. App. 2011) (citing *In re Estate of Feinberg*, 919 N.E.2d 888, 894 (Ill. 2009)).

[34] *Id.* (quoting *Vine Street Clinic v. HealthLink, Inc.*, 856 N.E.2d 422, 436 (2006)) (internal quotation marks omitted).

[35] *Id.* (citing *Kleinwort Benson N. Am., Inc. v. Quantum Fin. Servs., Inc.*, 692 N.E.2d 269, 275 (Ill. 1998)).

[36] *Archer Daniels Midland Co. v. Burlington Ins. Co. Grp.*, 785 F. Supp. 2d 722, 735 (N.D. Ill. 2011).

agreement in which one party gives consideration that is so insignificant that an actual obligation cannot be imposed."  This argument, however, ignores the fact that GSF received over $1 million dollars in legal fees over the term of the Agreement.  Thus GSF cannot rely on a lack of consideration for arguing that the Agreement violates public policy.

Moreover, none of the cases GSF relies on support its argument that paragraph 23.g. violates public policy.  GSF relies on *Holstein v. Grossman*[37] for the general rule that courts will not enforce a private agreement that is contrary to public policy.  However, *Holstein* involved an intra-attorney fee sharing agreement that the client never consented to,[38] and which is much different from the Agreement here.  GSF also incorrectly states that the Illinois courts have adopted the public policy that a contract requiring complete forfeiture of fees by an attorney renders an attorney fee contract illusory and violates public policy.  But, the case GSF cites in support of this proposition, *National Union Fire Insurance Co. v. Glenview Park District*,[39] actually involves the interpretation of an exclusion in an insurance policy.[40]  The court in that case held that it was unnecessary to determine whether that exclusion was void and unenforceable against public policy.[41]  The Court is simply not persuaded that paragraph 23.g. violates public policy and is thus unenforceable.

Finally, GSF also claims, without citing any authority, that paragraph 23.g. is a forfeiture provision.  Under Illinois law, "[t]he crux of forfeiture is punishment or penalty for some

---

[37] 616 N.E.2d 1224 (Ill. App. 1993).

[38] *Id*. at 1229.

[39] 632 N.E.2d 1039 (Ill. 1994).

[40] *Id*. at 1046.

[41] *Id*.

improper conduct or act done by the party against whom forfeiture is sought."[42]  Here, GSF is not being punished for some improper or illegal act it committed.  Indeed, GSF has emphasized, and the parties agree, that the Agreement was terminated without cause.  Thus, paragraph 23.g. is not unenforceable on this basis as well.

### iv.  State Farm Has Not Selectively Enforced the Agreement.

In response to State Farm's motion for summary judgment, GSF argues that State Farm has selectively enforced the Agreement.  First, GSF contends that State Farm departed from the terms of the Agreement by entering into separate engagement letters with GSF after execution of the Agreement, by paying attorney fees on a matter where there was no recovery whatsoever, and by reimbursing GSF its expenses more than thirty days after termination of the Agreement. GSF contends that this selective enforcement of the Agreement should result in the invalidation of its terms or create an ambiguity in its interpretation.

This argument fails for at least two reasons.  First, with regard to GSF's statements that it entered into separate engagement letters with State Farm and that State Farm paid its expenses more than thirty days after termination, GSF has not supported these facts with admissible evidence as required by D. Kan. Rule 56.1, and thus they are disregarded by the Court.  At most, State Farm has admitted that it retained GSF on occasion to perform hourly services in matters where there was yet no subrogation claim.   GSF, however, has not pointed to any writing showing that State Farm departed from the Agreement.

And second, GSF's argument fails based on the language of the Agreement.  GSF argues that under Illinois law, a condition precedent may be waived, and that GSF waived paragraph

---

[42] *In re Possession & Control of the Comm'r of Banks & Real Estate*, 764 N.E.2d 66, 123 (Ill. App. 2001).

23.g. by making expense payments more than thirty days after termination.  The Agreement, however, contains a "No Waiver" provision stating that "if either party on any occasion fails to adhere to any term of this Agreement, and the other party does not enforce that term, the failure to enforce on that occasion shall not prevent enforcement on any other occasion."  Therefore, even if State Farm did selectively enforce the Agreement, it is still entitled to enforce paragraph 23.g. with regard to GSF's claim for attorneys' fees.

Finally, GSF takes issue with State Farm's alleged failure to comply with the Agreement's arbitration clause.  Paragraph 22 of the Agreement states that "any controversy or claim arising out of this Agreement shall be submitted to non-binding arbitration."  GSF claims that it demanded arbitration of the parties' dispute before State Farm filed its Complaint, and that this Court is required to find that the subject matter of the Complaint is covered by this clause.  It also argues that State Farm's decision to ignore GSF's demand and the arbitration clause is prima facie evidence of State Farm's selective enforcement of the Agreement.

The Court sees little merit in this argument.  If GSF is asking the Court to find that the Agreement ceased to exist upon termination, then it cannot rely on this provision to argue that State Farm selectively enforced it because this provision would no longer exist.  GSF cannot pick and choose which provisions of the Agreement it wants to survive.  Furthermore, although GSF may have demanded arbitration before State Farm filed suit, it has never filed a motion to compel arbitration in this litigation.  Section 4 of the United States Arbitration Act states that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United State district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement."  GSF's page and half argument regarding arbitration in response to State Farm's motion for summary

judgment is not a motion to compel arbitration, and absent such motion, the Court sees no reason to determine whether the issues in the Complaint are covered by paragraph 22 of the Agreement. Therefore, the Court does not find State Farm's alleged failure to arbitrate a valid basis for invalidating paragraph 23.g. of the Agreement.

### v. State Farm Has Not Violated the Covenant of Good Faith and Fair Dealing.

Finally, GSF asserts that State Farm has violated the covenant of good faith and fair dealing.  Under Illinois law, every contract implies good faith and fair dealing between the parties to it.[43]  This covenant is not an independent cause of action.[44]  Instead, a breach of the covenant of good faith and fair dealing is simply a breach of the underlying contract.[45]  Problems involving the covenant of good faith and fair dealing usually arise when one party to the contract is given broad discretion in performance.[46]  "The covenant of good faith requires that a party vested with contractual discretion exercise that discretion reasonably, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectation of the parties."[47] "Courts will not, however, interpret the covenant to make a better contract for the parties than they made for themselves, nor will courts construe the covenant to establish new, independent rights or duties not agreed upon by the parties."[48]

---

[43] *Martindell v. Lake Shore Nat'l Bank*, 154 N.E.2d 683, 690 (Ill. 1958).

[44] *See Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1443 (7th Cir. 1992) (citations omitted); *Indus. Specialty Chem., Inc. v. Cummins Engine Co.*, 902 F. Supp. 805, 811 (N.D. Ill. 1995).

[45] *Indus. Specialty*, 902 F. Supp. at 811.

[46] *N. Trust Co. v. VIII S. Michigan Assoc.*, 657 N.E.2d 1095, 1104 (Ill. App. 1995) (citing *Resolution Trust Corp. v. Holtzman*, 618 N.E.2d 418, 424 (Ill. 1993)).

[47] *Id.*

[48] *Darovec Mktg. Grp, Inc. v. Bio-Genics, Inc.*, 114 F. Supp. 2d 752, 762 (N.D. Ill. 2000); *Northern Trust Co.*, 657 N.E.2d at 1104.

Here, GSF has failed to show that State Farm had considerable discretion in compensating GSF after termination of the Agreement.  The Agreement clearly states that GSF is not entitled to any fee on any funds State Farm receives more than thirty days after termination of the Agreement.  GSF's argument that State Farm has violated the covenant of good faith and fair dealing is yet another attempt to avoid the contractual language it bargained for when it signed the agreement.  The Court therefore finds that State Farm did not violate this covenant.

### vi.  Conclusion

Despite GSF's best efforts to invalidate paragraph 23.g., the Court finds it to be unambiguous and enforceable.  The Court must therefore give its words "their plain, ordinary and popular meaning."[49]   Under the language of paragraph 23.g., GSF cannot recover any attorneys' fees on any funds State Farm received more than thirty days after termination of the Agreement.  This prohibits GSF from recovering the contingency fee on the seven Pending Subrogation Claims that settled after termination of the Agreement.  Therefore, the Court grants summary judgment to State Farm on this issue and denies summary judgment to GSF.

### 3.      GSF Cannot Establish a Claim for Breach of Contract.

In its motion for summary judgment, GSF claims that State Farm amended the Agreement and then breached its terms by not allowing GSF to handle the Pending Subrogation Claims "to conclusion."  GSF bases its argument on the May 1, 2013 letter from State Farm to GSF, which states: "We have agreed that your law firm will continue to handle the subrogation files currently in your inventory to conclusion."   According to GSF, this letter modified the Agreement or created a separate contract between State Farm and GSF.  GSF argues that State

---

[49] *Thompson v. Gordon*, 948 N.E.2d 39, 47 (Ill. 2011) (citing *Cent. Ill. Light Co. v. Home Ins. Co.*, 821 N.E.2d 206 (2004)).

Farm breached the contract by transferring the Pending Subrogation Claims to another law firm thereby denying GSF the ability to handle the files "to conclusion." According to GSF, the consequence of this breach is that State Farm must pay the reasonable value of the professional services that GSF provided to State Farm.

In response, State Farm contends that it never amended the Agreement or created a new contract with GSF. The Court agrees. Although GSF correctly cites the language of the May 2013 letter in its argument, it conveniently ignores the next sentence following its quote, which states: "These files will continue to be handled per the terms and conditions of the existing Master Agreement and Request for Services – Work Rules." This sentence makes clear that after the May 1, 2013 letter GSF would handle the current subrogation files pursuant to the Agreement—not a new or amended contract. There is no evidence that GSF objected to or contested the terms of the May 2013 letter. Thus, by its very language, the May 2013 letter does not appear to amend the Agreement or create a new contract.

GSF's argument also fails based on the Agreement's terms. The last paragraph of the Agreement states that it "cannot be amended or otherwise modified, except as agreed to in writing by each of the parties hereto." This language is unambiguous, and under Illinois law should be given full effect.[50] The May 2013 letter was not signed by both parties. Therefore, it cannot qualify as an amendment to the Agreement.

GSF attempts to claim that the May 2013 letter qualifies as an amendment even though it does not comport with the terms of the Agreement because State Farm and GSF entered into

---

[50] *See Fid. Nat'l Title Ins. Co. v. Westhaven Props. P'ship*, 898 N.E.2d 1051, 1064 (Ill. App. 2007) (stating that "when parties agree to and insert language into a contract, the presumption is that it was done purposefully and the language employed is to be given effect").

separate engagement letters for some of the claims.   However, as noted above, GSF fails to

support its argument with admissible evidence.   While State Farm admits that it retained GSF to

perform hourly services in matters where there was yet no subrogation claim, GSF cannot point

to any writing which established a modification of the Agreement in those events.   Therefore,

they are not material here.   GSF simply has not met its burden to show that it is entitled to

judgment as a matter of law on this claim.   Therefore, the Court denies GSF's motion for

summary judgment on its breach of contract claim and grants State Farm's motion for summary

judgment on this claim.

### 4.  GSF Is Not Entitled to Recover on Its Equitable Claims.

GSF has asserted three counterclaims seeking equitable relief—a claim for quantum

meruit, a claim for promissory estoppel, and a claim for unjust enrichment.   Both parties move

for summary judgment on these claims.   The Court will address each below.

### a.  Quantum Meruit

Quantum meruit is a quasi-contract theory, the essence of which is "the receipt of a

benefit by one party which would be inequitable for that party to retain."[51]   GSF contends that it

is entitled to recover under this theory based on a line of Illinois cases stating that when an

attorney in a contingency fee contract is terminated without cause, the contract ceases to exist

and the attorney may recover the reasonable value of his or her services under quantum meruit.[52]

Specifically, GSF relies on *Rhoades v. Norfolk Western Railway Co.*, in which the Illinois

Supreme Court held that an attorney who was discharged without cause could not perfect a

---

[51] *Midcoast Aviation, Inc. v. Gen. Elec. Credit Corp.*, 907 F.2d 732, 737 (7th Cir. 1990) (quoting *Telander v. Posejpal*, 418 N.E.2d 444, 448 (1981)).

[52] *See, e.g., Callahan*, 578 N.E.2d at 988; *Rhoades v. Norfolk & W. Ry. Co.*, 399 N.E.2d 969, 975 (Ill. 1979).

statutory lien, but rather, was "entitled to be paid on a quantum meruit basis a reasonable fee for the services rendered before discharge."[53]

In response, State Farm argues that GSF cannot establish a claim for quantum meruit because the parties entered into an express contract and that contract controls GSF's compensation. State Farm relies on Illinois case law stating that a plaintiff cannot prevail under quantum meruit if there is an express contract.[54] It also points the Court to a persuasive Illinois appellate case—*Industrial Lift Truck Service Corp. v. Mitsubishi International Corp.*[55]

In *Industrial Lift Truck Service Corp.*, a dealer and distributor entered into a dealership agreement that the distributor later terminated according to its terms.[56] The dealer sued alleging that the agreement was an adhesion contract and thus the termination clause was invalid.[57] The dealer sought reimbursement for improvements it made to vehicles and costs incurred in developing design changes under quasi-contract principles.[58] The court held that the dealer could not recover the amount it expended for the improvements or costs.[59] The court cited the general rule "that no quasi-contractual claim can arise when a contract exists between the parties

---

[53] *Id.* at 975.

[54] *Laff v. Chapman Perf. Prods., Inc.*, 379 N.E.2d 773, 783 (Ill. 1978) ("Clearly, when an express contract exists, a resort to Quantum [sic] meruit principles is unnecessary because the attorney and client have already agreed on the value of services."); *Kinion*, 454 N.E.2d at 629-30.

[55] 432 N.E.2d 999 (Ill. 1982).

[56] *Id.* at 1000-01.

[57] *Id.* at 1001.

[58] *Id.*

[59] *Id.* at 1003.

-26-

concerning the same subject matter on which the quasi-contractual claim rests."[60]   The Court

then explained:

> The reason for this rule is not difficult to discern.   When parties enter into a
> contract they assume certain risks with an expectation of return.   Sometimes, their
> expectations are not realized, but they discover that under the contract they have
> assumed the risk of having these expectations defeated.   As a result, they have no
> remedy under the contract for restoring their expectations.   In desperation, they
> turn to quasi-contract for recovery.   This the law will not allow.   Quasi-contract is
> not a means for shifting a risk one has assumed under the contract.[61]

The court rejected the dealer's argument that quantum meruit should apply using reasoning that

also applies to GSF's claim here.   The court found that the dealer made the design changes with

the view of being compensated pursuant to the contract's terms.   The court further stated:

> When the changes were made, plaintiff knew the risk involved.   It knew the
> contract could be terminated as it was terminated, and thus knew when it made
> the changes that it might not be compensated under the contract to the extent it
> hoped to be compensated.   Now that a situation plaintiff knew could occur has
> occurred, plaintiff seeks to shift the risk it assumed in light of the contract to
> defendant.   In essence, plaintiff is seeking to use quasi-contract as a means to
> circumvent the realities of a contract it freely entered into.[62]

Here, GSF entered into the Agreement knowing the risk involved.   It knew that State

Farm could terminate the Agreement as it was terminated and knew based on the language of

paragraph 23.g. that it could not recover any fees on any funds State Farm received thirty days

after termination.   It also knew that there was no other provision in the contract that provided for

GSF to be compensated in the event State Farm did not recover funds on any of the Pending

Subrogation Claims within thirty days after termination.   Like the dealer in *Industrial Lift Truck*

*Service Corp.*, now that a situation GSF knew could occur has occurred, GSF is seeking to shift

---

[60] *Id.* at 1002.

[61] *Id.* (citation omitted).

[62] *Id.*

the risk it assumed under the Agreement.  The law will not allow GSF to use quantum meruit "as a means to circumvent the realities of a contract it freely entered into."[63]

GSF argues that the cases it cites are more applicable than *Industrial Lift Truck Service Corp*., because they involve an attorney and client who have entered into a contingency fee relationship.  But, as previously noted, the cases GSF cites are inapplicable because the Agreement contains a survival provision.  Neither the Agreement nor paragraph 23.g. ceased to exist upon termination.[64]

The Court finds that GSF's claim for quantum meruit is barred by the Agreement.  Although this is a harsh result, it is not one that is unanticipated by the parties.  GSF freely entered into the Agreement, knew the risk involved should State Farm terminate it, and accepted the benefits of the Agreement during its term.  Therefore, the Court grants summary judgment for State Farm and denies summary judgment for GSF on this counterclaim.

### b. Promissory Estoppel

GSF asserts an alternative claim for promissory estoppel.  To establish such a claim, GSF must prove that (1) State Farm made an unambiguous promise to it; (2) GSF relied on such promise; (3) GSF's reliance was expected and foreseeable by State Farm; and (4) GSF relied on the promise to its detriment.[65]  The Illinois Supreme Court has held that "[a]pplication of promissory estoppel is proper only in the absence of an express agreement."[66]  According to that

---

[63] *Id.*

[64] GSF also argues that it is entitled to recover under the common fund doctrine, but GSF did not assert such a claim in its First Amended Counterclaim and thus cannot seek summary judgment on it.  *See Lawmaster v. Ward*, 125 F.3d 1341, 1346 n.2 (10th Cir. 1997).

[65] *Newton Tractor Sales, Inc. v. Kubota Tractor Corp.*, 906 N.E.2d 520, 523-24 (Ill. 2009) (citing *Quake Const., Inc. v. Am. Airlines, Inc.*, 565 N.E.2d 990, 1004 (Ill. 1990)).

[66] *Matthews v. Chicago Transit Auth.*, 2016 WL 2586346, at *21 (Ill. May 5, 2016) (citations omitted).

court, this rule applies "because promissory estoppel is intended as a means to enforce gratuitous promises and is not designed to provide a party to a negotiated bargain a "second bite at the apple" if it fails to prove breach of contract.[67]

In this case, GSF acknowledges that there was a written contract between it and State Farm.  It alleges that State Farm promised to pay for GSF's professional services rendered in the pursuit of subrogation claims and that GSF relied on that promise and performed its obligations under the Agreement by representing State Farm and its insured in the subrogation claims.  The Court has found the Agreement to be enforceable and to control the relationship of the parties. Therefore, GSF's claim for promissory estoppel fails.  The Court grants summary judgment to State Farm on this claim and denies summary judgment to GSF.

### c.   Unjust Enrichment

GSF contends that it is entitled to recover under the alternate theory of unjust enrichment. The doctrine of unjust enrichment is based upon implied contract.[68]  Where there is a specific contract that governs the relationship, the doctrine does not apply.[69]  State Farm has established that there was an express contract that governed the relationship between State Farm and GSF. Because of this, the doctrine of unjust enrichment does not apply.  Therefore, the Court grants summary judgment to State Farm and denies summary judgment to GSF on this claim.

---

[67] *Id*. (citing *Printice v. UDC Advisory Servs., Inc*., 648 N.E.2d 146, 151 (Ill. 1995)).

[68] *Stathis v. Geldermann, Inc*., 692 N.E.2d 798, 823 (Ill. App. 1998) (*citing People ex rel. Hartigan v. E&E Hauling, Inc.*, 607 N.E.2d 165, 177 (Ill. 1992)).

[69] *Id*.

**5.     GSF's Attorney Liens**

The parties both move for summary judgment as to whether GSF's attorneys' liens are valid and enforceable.  GSF states that it filed the liens to put State Farm on notice that it did not consent to the application of paragraph 23.g. at the time of termination.  GSF further states that it does not seek to enforce statutory lien laws but that it seeks to equitably enforce the liens.

The elements of an equitable lien are "(1) a debt, duty, or obligation owing by one person to another, and (2) a *res* to which that obligation fastens."[70]  In this case, however, the Court has not found that there is any debt owing to GSF.  Under the terms of the Agreement, State Farm does not owe GSF any attorneys' fees on the Pending Subrogation Claims.  Therefore, GSF cannot enforce any equitable lien it may assert.

State Farm has also shown that GSF's attorneys' liens are invalid.  Under Illinois law, an attorney cannot send a valid lien notice after termination of the attorney client relationship.[71]  All of GSF's lien notices were sent after State Farm terminated the Agreement and thus are invalid.

In addition, certain subrogation claims handled by GSF remained pending in Missouri and Kansas.  The Missouri courts have recognized that "[a]n attorneys' right to compensation remains based on contract, and attorneys liens [merely] provide security for these contractual rights."[72] And, in Kansas, the courts have held that an attorney's lien secures the contract fee when there is a contract that prima facie establishes the amount due the attorney for his service

---

[70] *Hargrove v. Gerill Corp.*, 464 N.E.2d 1226, 1231 (Ill. App. 1984) (citations omitted).

[71] *Rhoades*, 399 N.E.2d at 973-74.

[72] *Wright v. Bartimus Frickleton Robertson & Gorny PC*, 364 S.W.3d 558, 566 (Mo. App. 2011) (quoting 7A C.J.S. Attorney and Client § 443 (2004)) (internal quotations omitted).

unless that contract is unenforceable.[73]   Because the Court has found paragraph 23.g. of the Agreement enforceable, State Farm does not owe GSF any attorneys' fees, and GSF cannot establish it is entitled to equitably enforce its liens.   Therefore, the Court grants State Farm's motion for summary judgment and denies GSF's motion for summary judgment on this claim.

### 6.   Conclusion

After considering the parties' motions, the Court grants State Farm's Motion for Summary Judgment and denies GSF's Motion for Summary Judgment.   The Court therefore finds that:   (1) State Farm is entitled to summary judgment on its declaratory judgment claim because under the terms of the Agreement, GSF is not entitled to receive any fee on any funds State Farm received more than thirty days after termination of the Agreement and GSF's attorneys' liens are invalid: (2) State Farm is entitled to summary judgment on GSF's claims of quantum meruit, promissory estoppel, unjust enrichment, and breach of contract; and (3) State Farm is entitled to summary judgment on GSF's claim to enforce its attorneys' liens.

**IT IS THEREFORE ORDERED** that State Farm's Motion for Summary Judgment (Doc. 167) is **GRANTED**.

**IT IS FURTHER ORDERED** that GSF's Motion for Summary Judgment (Doc. 169) is **DENIED**.

**IT IS FURTHER ORDERED** that GSF's Motion to Strike State Farm's Memorandum in Opposition for Exceeding the Page Limit (Doc. 199) is **DENIED**.

---

[73] *Grayson v. Grayson*, 184 Kan. 116, 118, 334 P.2d 341, 343-44 (1959) (citations omitted).

**IT IS FURTHER ORDERED** that GSF's Motion to Strike the Affidavit of Jill Earley (Doc. 202) is **DENIED**.

**IT IS SO ORDERED**.

Dated this 1st day of July, 2016.

_Eric F. Melgren_
ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE